# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-4251

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JON S. HOLT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-CR-049-C-01—**Barbara B. Crabb**, *Chief Judge.*

ARGUED MAY 30, 2006—DECIDED AUGUST 22, 2006

Before POSNER, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Jon Holt was involved in a conspiracy to manufacture methamphetamine. Eventually the authorities caught up with him, and he was indicted by a federal grand jury both for the drug conspiracy, see 21 U.S.C. § 846, and for intimidating a witness, see 18 U.S.C. § 1512(b). This appeal concerns a number of evidentiary rulings the district court made during the course of Holt's trial, in which the court admitted evidence over Holt's objection based on Fed. R. Evid. 404(b). While some of that evidence might better have been excluded, we conclude that any error the district court may have committed was harmless. We therefore affirm.

**I**

According to Sheila Labo, who was also involved in the conspiracy, Holt supplied anhydrous ammonia and other ingredients to the individuals who cooked the drugs. The actual cooking took place in the garage of another co-conspirator, Rick Ware. Like many witnesses in drug cases, Labo was no saint. She was a heavy user of methamphetamine herself, she was cooperating with the police, and she used drugs and alcohol while on parole. Other witnesses also testified about Holt's role in the offense, consistent with Labo's account. The evidence to which Holt is now objecting on appeal was about his girlfriend, Nicole MacLean. At the time of the events charged in the indictment, MacLean had lived with Holt for approximately 10 years. Over defense objections, the trial court permitted the government to introduce evidence showing that the sexual relationship between Holt and MacLean had begun when MacLean was only 14 or 15 years old, and Holt was in his mid-thirties. The court also admitted evidence showing that Holt provided MacLean with her first methamphetamine when she was 15 years old; after that, she became a regular user and ultimately became addicted to the drug. Finally, MacLean was permitted to testify that Holt hit her, injuring her face, approximately three weeks before her testimony before the grand jury. At the time, both Holt and MacLean were high on the drug. She also testified that Holt had hit her before.

When Holt and MacLean realized that investigators were looking for MacLean so that they could serve her with a subpoena to testify before the grand jury, the two tried to evade service. Eventually, however, the subpoena was served and MacLean appeared. In spite of the fact that Holt was under a "no contact" order from a Minnesota court requiring him to stay away from MacLean, he met her on the day of the grand jury appearance, drove her to Madison, and met her afterwards. Holt's actions with respect to

MacLean's grand jury testimony were the basis for the charge of intimidating a witness.

The jury convicted Holt on the drug count, but it acquitted him of intimidating a witness; this led to a sentence of 327 months in prison and three years' supervised release. On appeal, Holt complains only about the district court's evidentiary rulings relating to his relationship with MacLean. He has not raised any issue relating to his sentence.

## II

We review the district court's decision whether to admit evidence for abuse of discretion. *United States v. Redditt,* 381 F.3d 597, 600-01 (7th Cir. 2004). Even if there is a mistake, we will not reverse if the error was harmless. *United States v. Bonty,* 383 F.3d 575, 579 (7th Cir. 2004). We therefore evaluate challenges like Holt's in light of all the evidence that was before the jury.

Before addressing the merits of Holt's arguments, we must decide whether he may present them at all, or if (as the government urges) he waived them. Holt's brief argues that the district court admitted the evidence regarding MacLean in violation of Fed. R. Evid. 404(b). According to the government, however, Rule 404(b) never entered the picture, because the district court admitted the evidence as "inextricably intertwined" with the intimidation count— put more succinctly, as directly relevant to the charge. Holt's opening brief does not separately discuss either the possibility that this evidence was an integral part of the intimidation count or Fed. R. Evid. 403, which allows a district court to exclude relevant evidence if its prejudicial impact substantially outweighs the value of the evidence. Responding to the government's position, Holt's reply brief asserts that the district court did *not* rely on the "inextricably intertwined" rationale. The reply brief also states that the

admissibility question might be addressed more directly under Rule 403, but that the balancing process is part of the Rule 404(b) analysis in any event, and so the question was preserved for appellate review.

We are satisfied that there was no waiver here. In its ruling from the bench, the district court did not fully spell out its reason for admitting the evidence. Holt made his position clear both there and in this court that he was objecting to the evidence on the ground that it was highly prejudicial. Moreover, the court's ruling did not occur in a vacuum. Prior to trial, Holt filed a motion *in limine* requesting an order that excluded from use at trial any evidence that he beat up Nicole MacLean in 2003 (on the ground that the alleged incident was unrelated to the charged offense), evidence that he had a sexual relationship with MacLean before she turned 18 (on the ground that this information was highly prejudicial and inflammatory), and evidence that he used methamphetamine with MacLean while she was still a teenager (on the ground that this evidence was more prejudicial than probative). Shortly thereafter, the government indicated its intent to offer evidence that Holt supplied MacLean with methamphetamine beginning when she was 14 and throughout their 10-year relationship. In its filing, the government argued that this evidence was directly relevant to the crime charged in Count 2 of the indictment and therefore admissible without regard to Rule 404(b). In the alternative, the government argued that even if the court thought that the evidence was subject to Rule 404(b) analysis, it was admissible to prove Holt's intent to intimidate MacLean prior to her grand jury testimony. In a letter to the court, defense counsel indicated that Holt objected to the admission of this evidence under Rules 403 and 404(b), and he took issue with the government's position that it was closely linked to the intimidation charge. The court then issued a preliminary order in which it said that the dispute about this evidence was "textbook

403 and 404(b)," and it said that the parties should be prepared to discuss the matter further at the final hearing. Even though, in the end, the district court commented when it allowed the evidence in that the nature of the relationship between Holt and MacLean was "very critical to understanding whether she was intimidated," and the court did not give a separate Rule 404(b) limiting instruction, we are satisfied that enough happened at the trial level to preserve the point for appellate review.

At this point, we would not reverse unless the evidence failed all tests of admissibility (otherwise, any error in citing one rule or another would be harmless). Rule 404(b) says that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"—in other words, other-crimes evidence cannot be used to show propensity to commit the charged crime, although it can be used for other enumerated purposes. But, if the evidence relates to acts "concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime," it is not evidence of "other" acts, as Rule 404(b) uses the term. *United States v. Ramirez,* 45 F.3d 1096, 1102 (7th Cir. 1995). Instead, it is part of the story of the very offense for which the defendant is on trial, even if it only does something like completing that story or explaining the circumstances. *United States v. Senffner,* 280 F.3d 755, 764 (7th Cir. 2002). Subject to Rule 403, which applies to all relevant evidence, evidence about these closely linked acts may be admitted.

At the time of the trial, of course, the government was still pursuing the witness intimidation charge. In order to convict Holt of violating 18 U.S.C. § 1512(b), the government had to prove that "1) [MacLean] was a witness or a prospective witness; 2) [Holt] attempted to persuade [MacLean] to provide false testimony; and 3) [Holt] acted knowingly and with the intent to influence [MacLean's]

testimony." *United States v. LaShay*, 417 F.3d 715, 718 (7th Cir. 2005). Direct evidence of intent, we have noted before, is usually unavailable. *United States v. Johnson,* 903 F.2d 1084, 1087 (7th Cir. 1990). The government therefore had to present circumstantial evidence that would satisfy this part of its burden of proof. See also *Old Chief v. United States,* 519 U.S. 172, 190 (1997) (reaffirming the general rule that "the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story," while ruling that this rule does not apply when the only issue is one of legal status independent of the concrete events of the criminal behavior).

By itself, the fact that Holt gave MacLean a ride to the grand jury proceeding seems innocuous. Only in the context of the abusive relationship that began when MacLean was just 14 years old and Holt was in his mid-thirties does it begin to take on a more sinister tone. The evidence showed that Holt beat and threatened MacLean within weeks of her grand jury appearance, against a backdrop of years of that kind of behavior. The sexual relationship also provided background for the jury, as it might have explained the hold that Holt had over a woman twenty years or so his junior. The district court did not abuse its discretion in deeming this evidence relevant to prove an element of the charged crime. See *United States v. Heath,* 447 F.3d 535, 539 (7th Cir. 2006).

We also see no abuse of discretion in the court's assessment that the probative value of this evidence outweighed its prejudicial impact, though we recognize that the prejudicial impact could have been considerable. We have already explained how it might have helped the jury to understand the intimidation charge; we add only that there is often an overlap between highly relevant and highly "prejudicial" evidence. The kind of prejudice that Rule 403 is designed to address is that which would cause the jury to decide on a basis other than the facts put before it. Similarly, part of

the analysis required under Rule 404(b) is the question whether "the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *United States v. Zapata,* 871 F.2d 616, 620 (7th Cir. 1989). Whichever rule applies, the inquiry and the outcome are the same. The government was not using this evidence to show Holt's propensity to beat MacLean; it was using it to prove his intent in driving her to the place where the grand jury was meeting.

Finally, even if we were to conclude that the district court should have excluded at least some of this evidence—perhaps the evidence of the origins of the sexual relationship and Holt's role in making MacLean a methamphetamine addict—any error it committed was harmless. The court carefully instructed the jury that it was to consider this evidence only in connection with the intimidation count, and the jury acquitted Holt on that charge. The chance that this evidence affected the jury's evaluation of the drug conspiracy count is low to none, given the strength of the government's case. As we noted earlier, Labo testified at trial that Holt agreed to provide anhydrous ammonia to her in order to make the methamphetamine. She also testified that she obtained a tank for the ammonia from Holt, as well as pills. Holt put her in touch with the people who were able to cook the methamphetamine and told her that he wanted half of the "cook." Witnesses Douglas Mudek and Wendy Phillips corroborated some of Labo's testimony. Mudek testified that Labo obtained the supplies (the anhydrous ammonia and pills) from Holt. He admitted that he agreed to cook the drugs for Holt and Labo. He also corroborated Labo's claim that Holt wanted half of the "production run." Another witness, Sharmin Hanson, also supported Labo's account. In the face of this testimony, we are satisfied that the evidence about MacLean could not have had an effect on the jury's verdict on the methamphetamine charges.

The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*